## Donaldson, to use, Appellant, *v.* Bielski.

Argued May 7, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Louis Vaira,* for appellant.

*John A. Metz,* with him *C. Joseph Recht,* for appellee.

OPINION BY STADTFELD, J., July 20, 1940:

This is a petition by Emerson Samuels, a junior creditor, under the Act of July 9, 1897, P. L. 237, 12 PS sec. 911, in which it is charged, that the use-plaintiff fraudulently and collusively confessed a judgment on a bond accompanying a mortgage, for $4,436.65. The petition admits, however, that the records show that there is $1,750.72 due on said mortgage, with interest from January 9, 1939.

A responsive answer was filed by the use-plaintiff in which he averred that he purchased this mortgage and bond over a period of time starting in the year 1928 and completed in July, 1937, when the assignment was dated, and that the sum of $4,436.65 was due and owing and denied that there was any fraud or collusion.

The case was heard before GARDNER, J., who, after hearing, reduced the judgment to $1,769.76 from which order this appeal is taken.

Emerson Samuels, a member of the bar of Allegheny County, was considering purchasing a judgment entered by a bank against Anastasia Bielski, which judgment was a lien against real estate owned by her in the City

of Clairton. Before purchasing the judgment, Mr. Samuels made an examination of the records and from the public records found: (1) That Mrs. Bielski's Clairton real estate was subject to a prior lien of approximately $2,000 unpaid taxes and also to the prior lien of a mortgage dated January 9, 1924, executed by her to John McB. Donaldson as mortgagee; (2) that John McB. Donaldson was dead; that his personal estate had been distributed by a decree of the Orphans' Court of Allegheny County; that at the time of this distribution there was owing on the mortgage $2750 (its face) and accrued interest thereon of $94.58 or a total of $2844.58; that this mortgage was distributed in kind as follows: an undivided one-third to Fidelity Trust Company of Pittsburgh, trustee, and an undivided two-thirds to Myrtle H. Donaldson; (3) that Myrtle H. Donaldson was dead; that the account filed by her executor showed the balance owing on her two-thirds undivided interest in the Bielski mortgage was $1167.15; that her interest in this mortgage was distributed in kind by decree of the Orphans' Court to Margaret H. McClay, Gertrude H. Wallace and Frances H. Humrickhouse; (4) that in accordance with the decree of distribution, the Fidelity Trust Company, the executor of her estate, by a written assignment, recorded in the Recorder's Office, assigned an undivided two-thirds interest in the Bielski mortgage to the said Margaret H. McClay et al., said recorded assignment showing on its face that the balance owing on the mortgage was $1750.72, and that the interest thereon had been paid to July 9, 1938.

Mr. Samuels then made inquiry of the Fidelity Trust Company, one of the record holders of the mortgage, and was advised by a Mr. Lockhart who had charge of the mortgage books, that the unpaid balance was $1750.72 and that the interest had been paid to July 9, 1938.

Relying on what the public records disclosed and their verification by the Trust Company, Mr. Samuels purchased the bank's judgment against Mrs. Bielski. The lien of this judgment was subsequent to the lien of the unpaid taxes and also to the lien of the balance owing on the Donaldson mortgage.

After notifying Mrs. Bielski that he intended to issue an execution if the judgment was not paid, Mr. Samuels issued an execution and levied on Mrs. Bielski's Clairton property which was sold November 6, 1939, by the sheriff for the amount of the costs. This sale was, of course, subject to the lien of the $2000 unpaid taxes and also to the lien of the balance owing on the Donaldson mortgage. Mrs. Bielski then filed exceptions to the confirmation of the sheriff's sale on the ground of inadequacy of price, which exceptions are still pending and not yet disposed of. The sale has not been confirmed.

Alexander J. Bielski, an attorney and a son of Anastasia Bielski, paid Margaret H. McClay and the other owners of the mortgage, the amount of the balance owing thereon, to-wit: $1750.72, and had the mortgage assigned to him by a written assignment, recorded November 20, 1939, which in terms assigned "all the unpaid balance due on said mortgage."

During the period from December 5, 1936, until September 11, 1939, Myrtle H. Donaldson and the Fidelity Trust Company as mortgagees, collected and received the rents from the mortgaged property and applied them on account of the principal of the mortgage, interest and taxes. The total amount of rents received was $2045. Of this amount $1483.88 was turned over to the Trust Company (the balance was retained by Mrs. Donaldson) and of the amount turned over to the Trust Company $64.96 was applied on account of interest and $573.79 was applied on account of the principal of the mortgage. The records of the Fidelity

Trust Company showed that the unpaid balance on the mortgage was $1750.72 and that the interest was paid to July 9, 1938.

While the confirmation of the sheriff's sale held November 6, 1939, on Samuels' execution was being held up by the exceptions filed by Mrs. Bielski, Alexander J. Bielski, on January 10, 1940, entered a judgment on the bond accompanying the mortgage—not for the unpaid balance, but for the sum of $4436.65. He issued an execution on the property in an attempt to collect the whole $4436.65. Bielski's explanation for attempting to collect this amount was that he was doing so on "the basis of a Certificate of No Defense" which he testified was obtained from his mother, the said Anastasia Bielski.

The foregoing is the fact situation which confronted Samuels on January 26, 1940, the date on which he filed his petition for relief in this case under the provisions of the Act of 1897, supra.

Appellant contends that the court below was without jurisdiction to proceed under the said Act which provides, inter alia, as follows: "In any case in which a judgment has been or shall hereafter be confessed in any court of record in this commonwealth, and upon which an execution has been or shall hereafter be issued, any creditor of the person or party against whom such judgment has been confessed shall have the right to apply, by petition, to the proper court for a rule on the plaintiff in such execution to show cause why the validity of the judgment should not forthwith be inquired into and the same set aside, and that such execution be stayed pending such inquiry, providing it is alleged in the petition for such rule that the creditor applying for the same has reason to believe that such judgment is invalid and fraudulent, and expects to be able to establish such fact at the hearing of said rule. And the court shall thereupon grant such rule

and direct that the hearing thereof shall be within not less than three days nor more than five days from the granting of the same, unless the court be of the opinion that a longer time for such purpose be necessary; and on the hearing of such rule the person or party against whom the said judgment was confessed, as well as the person or party [in] whose favor the same has been confessed, or other person having knowledge, may be called and examined, under oath, before the court for the purpose of disclosing the consideration of the note or other instrument under which said judgment was confessed, and all other matters relating to the validity and bona fides of such judgment; and at the conclusion of such hearing the court shall make an order either setting aside such judgment, or dismissing the proceedings or such other order, as in the opinion of the court the testimony will warrant; ......"

As far back as *Clark et al. v. Douglas,* 62 Pa. 408, the Supreme Court said, at p. 415: "A judgment confessed voluntarily by an insolvent or indebted man for more than is due is prima facie fraudulent within the Statute of 13 Eliz. c. 5."

Judgment was confessed for mortgage debt $4436.65, in spite of the fact that the Fidelity Trust Company itself, from the portion of the rents turned over to it, applied $573.79 to the payment of principal which originally was only $2750, and that Mrs. Donaldson, as mortgagee, had received rents totaling $2045 of which only $1483.88 was turned over by her to the Trust Company, and in spite of the fact that the records in the Recorder's Office, the books of the Trust Company and the testimony of the employee of the Trust Company who had charge of the books, all are to the same effect—that the unpaid balance of the mortgage was only $1750.72.

The evidence in this case is conclusive, that the balance owing on the mortgage is the sum of $1750.72 to-

gether with interest thereon from January 9, 1939, less a credit of $150 received from rents by Alexander J. Bielski after the mortgage was assigned to him, and that any attempt to collect any sum in excess of this amount is fraudulent and collusive as to Samuels and other bona fide creditors of Mrs. Bielski.

Irrespective of what may have been the proper remedy prior to the Act of 1897, we are of the opinion that the facts in this case bring it within the purview of said Act and that the court had full jurisdiction.

The appellant did not file exceptions to either the account of the executor, or the decree of distribution. Instead, he permitted both the account and the decree of distribution to be confirmed absolutely. He did not make any objection or file exceptions to the court's distributing to others, the mortgage which he now claims he had the right by agreement to purchase and have assigned to him. He stood idly by and permitted someone else to acquire title to the unpaid balance of the mortgage in good faith and without any notice that he had or claimed to have any rights or interest in the mortgage.

The appellant not only permitted someone else to acquire title to the mortgage, but he permitted the executor of Mrs. Donaldson's estate, without any objection on his part, to assign the interest in the unpaid balance of the mortgage, which it held as executor, to the three sisters of Mrs. Donaldson by a written instrument which showed on its face that the unpaid balance owing on the mortgage was $1750.72 and that the interest thereon had been paid to January 9, 1939. This written instrument was recorded in the Recorder's Office of Allegheny County on May 3, 1939. The public records disclosed the fact that the Fidelity Trust Company as trustee was the owner and holder of an undivided one-third interest in the mortgage and that the three sisters of Mrs. Donaldson were the owners and

holders of the remaining two-thirds undivided interest. The public records also disclosed that the unpaid balance due and owing on the mortgage was the sum of $1750.72.

If the public record was not in accordance with the true facts, it was appellant's duty to have it corrected. The record remained from May 3, 1939, until the present time without any attempt made by the appellant to amend or change it. He permitted the record to give notice to Samuels and to the other creditors of Mrs. Bielski and to anyone having any interest in the matter, of both the amount of the balance owing on the mortgage and of the names of the parties holding it and having a right to collect thereon. He permitted Samuels and any other person, examining the records, to be deceived by the records, in case the appellant had any rights in the mortgage which he could assert to their detriment. He cannot be permitted to profit by his own neglect and to cause loss and injury to Samuels and other subsequent creditors who relied upon the record.

The Act of 1897, supra, was before this court for consideration in the case of *Marshall v. Klein et al.,* 96 Pa. Superior Ct. 580. In an opinion by our Brother BALDRIGE, the court said, at p. 583: "The Kirchs purchased the property subject to a first mortgage in the amount of twenty-eight hundred ($2,800) dollars. The payment of the twelve hundred ($1,200) dollars and a receipt therefor placed on the margin of the record clearly indicates that it was a payment of that portion of the debt. *The public records disclose that fact and if the record was not in accordance with the understanding of the Kirchs, it was their duty to have it corrected. The record remained from December to October without any apparent attempt made to amend it.* It was the duty of the judge to determine the intention of the parties, but he was not bound to look into

the actual facts of payment or intention of the parties further than was made accessible by the record, as that was the only evidence before him: *Meigs v. Bunting,* 141 Pa. 233." (Italics supplied).

The instant case is even stronger than the case cited in that in the former the assignment to Alexander Bielski covered only the "unpaid balance" of the mortgage.

Appellant further contends that the court below erred in receiving in evidence, as a self-serving exhibit, the first and final account in the estate of Myrtle H. Donaldson, deceased, at No. 114 March Term 1935, Orphans' Court of Allegheny County, showing the amount of the mortgage in question. The same objection is asserted as to the admission of inventory and appraisement in the same exhibit, showing the interest of the estate in the same mortgage. We see no merit in these contentions.

Appellant assigns as error the admission of the testimony of Samuels as to the statements made to him by Mr. Lockhart who had charge of the Trust Company's books, relating to the mortgage and that the unpaid balance was $1750.72, as being hearsay. Even if it were hearsay, it did appellant no harm because Mr. Lockhart was himself called as a witness and testified that he had informed Samuel that the unpaid balance of the mortgage was $1750.72.

Appellant also assigns as error the refusal of the court below to permit him to testify as to the terms under which he purchased the mortgage from the mortgagee or his assignees. Appellant testified as follows: "Q. From whom did you buy this mortgage? A. I have the original bond and mortgage. The mortgage was purchased from the Fidelity Trust Company, trustee under the will of John McB. Donaldson, and Margaret H. McClay, Frances H. Humrickhouse, and Gertrude H. Wallace, on the 31st day of July, 1939." The trial

court, therefore, very properly refused to permit the appellant to testify as to any alleged arrangement to purchase the mortgage which he claimed to have made either with John McB. Donaldson, now dead, or with the Fidelity Trust Company in 1936 or 1937, at which time the Trust Company held only an undivided one-third interest in the mortgage as trustee, and had nothing whatever to do with the other undivided two-thirds interest which was owned by Mrs. Donaldson with whom the appellant did not even claim to have any arrangement.

A plaintiff and defendant may agree that the plaintiff may collect any sum he sees fit on the judgment, but this is only as between themselves, and they cannot be permitted to commit a fraud on junior or subsequent judgment creditors.

We find no error which warrants a reversal of the order of the court below.

Order affirmed. Costs to be paid by appellant.