# Hodge's Appeal.

Where a mortgage is a security for the whole number of a series of bonds in a distribution of the proceeds of the sale of the mortgaged property, the holders of the bonds share pro rata in the distribution, and if a holder of a bond is entitled to its proceeds other holders cannot set up any informality in the manner of its acquisition.

May 21st 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, WOODWARD and STERRETT, JJ.· PAXSON, J., absent.

Certiorari sur appeal to the Court of Common Pleas of *Adams county* : Of May Term 1877, No. 185.

Appeal by J. Ledyard Hodge from the decree of the court in the distribution of the proceeds of the estate of Emanuel Harmon.

Harmon executed and delivered to trustees a mortgage on a property in Adams county, to secure the. payment of two hundred bonds, each for the sum of $500. By the terms of the bonds, each holder was entitled to the security of said mortgage, and the bonds were made transferable by delivery, but might, at the option of the holder expressed in writing thereon, be made transferable only by endorsement. The real estate was sold by the sheriff, and after satisfying prior liens in full, there was left remaining to be dis- tributed under the mortgage a balance of $6894.98.

Before the auditor appointed to distribute this balance, S. A. Whitney produced for payment 198 of these bonds, numbered from 3 to 200, each having thereon this endorsement : " The within bond . is payable to me or assigns. E. HARMON." The two remaining bonds, numbered 1 and 2, were presented by J. L. Hodge, upon which was the same endorsement, together with the following : " The within bond is hereby assigned to J. Ledyard Hodge. E. HARMON."

On behalf of Hodge it was contended, that inasmuch as Hodge is a bona fide holder of his bonds for value paid, he should be paid in full before Whitney can claim any part of the funds, because Whitney is not such a holder; that at the time the bonds were delivered to him, the indebtedness to Whitney by Harmon did not all exist; that it is not known what indebtedness there was at the time they were delivered; that they were not delivered as security for any money or credit obtained by Harmon from Mr. Whitney at the time of their delivery; that they were not transferable by delivery, because of the endorsement thereon by Emanuel Harmon, thereby making them transferable only by endorsement, as is stipulated in said bonds; that the right of the holder of bonds 1 and 2 is superior to any equities which may have been created between Harmon and Whitney by the delivery of the 198 bonds; and also that the equities of the holder of said bonds are superior to the equities of Whitney on said fund.

The auditor found that Harmon was indebted to Whitney, but the date and amount of the indebtedness could not be determined from the testimony of the witnesses; that he delivered the 198 bonds numbered from 3 to 200, without assignment or transfer in writing to Whitney as collateral security for his then indebtedness to Whitney, and also for collateral security for subsequent loans which Whitney might make to him; and that at the time of his death the aggregate amount of Harmon's indebtedness to Whitney and for which the 198 bonds were delivered to him by express, exceeded $50,000—an amount far beyond what will be realized by a pro rata out of the disputed fund—but that no debt was contracted with, or by, or loan obtained by Harmon from Whitney at the time the bonds were so delivered, but the whole indebtedness was created at periods before and after the delivery of the bonds.

He was of opinion, therefore, "that Hodge accepted his bonds upon the condition contained in the whole series, and his equities required that all subsequent holders should hold their bonds properly transferred before they should be allowed to share with him the equities of the security."

"The bonds originally transferable by delivery were divested of that character when Harmon, before passing them out of his hands, impressed upon them a different character, as he was authorized to do by the terms of the bonds, by endorsing upon them in writing that they should be payable to his assigns. After this endorsement by Harmon, the bonds were transferable only by endorsement; and there being no endorsement to Whitney, his right is incomplete as against the holder of the first two bonds, which were transferred bona fide by endorsement. Furthermore, in analogy to negotiable paper, these bonds were not passed to Whitney in the usual course of business, but as collateral security for past liabilities, and future loans of an indefinite amount.

[Hodge's Appeal.]

He, therefore, awarded to Hodge the amount of the face of his bonds. To this award Whitney excepted, and the court, McClean, P. J., sustained the exception, and directed that the fund should be distributed pro rata among the creditors.

From this decree Hodge took this appeal.

*J. M. Krauth* and *M. W. Jacobs*, for the appellant.—The papers produced by Whitney were not bonds, but incomplete and invalid instruments; while the bonds of Hodge were valid and regular, and alone entitled to take under the mortgage. The endorsements made by the obligor before the delivery of the bonds constituted a part of them : Stocking *v.* Fairchild, 5 Pick. 181 ; Cook *v.* Remington, 6 Mod. 237 ; Stone *v.* Handsbrough, 5 Leigh 422'; Williams *v.* Handley, 3 Bibb 10. The legal effect of the instrument with the first endorsement only was to render it payable to the obligor, which involved a legal absurdity, and the instrument was void : Pearson *v.* Nesbit, 1 Dev. (N. C.) 315 ; Justices *v.* Shannonhouse, 2 Id. 6 ;. Brown *v.* De Winton, 6 C. B. 336 (60 E. C. L. R.) ; Smalley *v.* Wight, 44 Maine 442 ; Smith *v.* Lusher, 5 Cowen 688.

Prima facie, at least, Hodge was the only holder of bonds secured by the mortgage ; the other bonds, for anything that appeared upon them to the contrary, were still undelivered and the property of the obligor. Upon this state of facts Hodge was entitled to have his claim paid in full, out of the proceeds of the mortgage, for Harmon had no equities against him.

A creditor who takes a chose in action as collateral security for an antecedent debt is not such a holder for value as will be protected against equities outstanding against the assignor. See cases from Petrie *v.* Clark, 11 S. & R. 377, to Smith *v.* Hogeland, 28 P. F. Smith 257, and Pittsburgh and Connellsville Railroad Co. *v.* Barker, 5 Casey 161 ; Cary *v.* White, 52 N. Y. 138 ; United States *v.* Hodge, 6 How. 279 ; Bell *v.* Banks, 3 M. & G. 258 (42 E. C. L. R. 141) ; Twopenny *v.* Young, 3 Id. 208 (10 E. C. L. R. 54) ; Ashton's Appeal, 23 P. F. Smith 162.

The bonds were issued for a specific purpose, viz., to discharge certain debts of Harmon. They were put in Whitney's hands not for this purpose, but to afford him additional security. This was a fraud upon Hodge, and Whitney, having taken the bonds with full notice, was a party to it : Garrard *v.* Pittsburgh and Connellsville Railroad Co., 5 Casey 154 ; United States *v.* Hodge, 6 How. 279 ; Cary *v.* White, *supra*.

*R. G. McCreary*, for appellee.—The bonds, without any endorsement, were perfect instruments, the obligations being to trustees and the money named in them being payable to the holder. The

endorsement was but a memorandum of a fact existing at the time as to the right of property and was not intended to have the effect claimed. No assignment by Harmon, in writing, was necessary. The delivery of these bonds to Whitney was upon valuable consideration and amounted to an equitable assignment: Story's Eq. Jur., vol. 2, sect. 1047 ; Brightly's Eq., sect. 354 ; Morton *v.* Naylor, 1 Hill (N. Y.) 583 ; Clemson *v.* Davidson, 5 Binn. 392–8 ; McIlree *v.* Guy, 1 Phila. 488.

The purchaser of bonds is not bound to see to the application of the purchase-money. The presumption is in favor of its proper application and the onus of proving its misapplication is upon him who asserts it : Co. Litt. 232.

Where fractional parts of the same mortgage debt are successively assigned to different persons, if the proceeds of the mortgaged property be insufficient to pay all, they take pro rata: Donley *v.* Hays, 17 S. & R. 400 ; Mohler's Appeal, 5 Barr 420 ; Perry's Appeal, 10 Harris 43 ; Hancock's Appeal, 10 Casey 156.

The judgment of the Supreme Court was entered, June 4th 1877,

Per Curiam.—The mortgage is a security for the whole number, and for each and every bond recited in it. By the terms of the instrument they stand in equal protection. Each bond therefore carries only a fractional interest of $500 in the property mortgaged. The fund arising from the sale of the property is its representative, and is owned by the bondholders in the same proportion. From the terms and nature of the mortgage, the time and manner of the transfer of each are not material ; the only real question being whether each holder is entitled to it. The question of ownership, whether it be at law or in equity, is not material. If the holder of a bond is entitled to its proceeds, the holder of other bonds cannot set up mere informalities in the manner of its acquisition. The distribution, according to the act, must be according to equity as well as law. They are therefore entitled to come in pro rata on the mortgage fund.

Decree affirmed, at the costs of the appellant, and the appeal dismissed.