## Peoples Trust Company's Mortgage Pools.

554

Argued May 5, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ray G. Light,* for appellant.

*Harry A. Honker,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1937:

This is an appeal from the decree of the learned court below sustaining certain exceptions to an account of the trustee of a mortgage pool.

J. Walter Snoke executed and delivered to the Peoples Trust Company of Annville a bond and mortgage, dated September 4, 1924, in the sum of $4,500, with interest at 6%. On December 1, 1925, the trust company sold and transferred to Leah B. Stauffer, $3,000 of this mortgage, "with all the rights, remedies, incidents and appurtenances thereto belonging ...... TOGETHER with the bond or obligation in said Indenture of Mortgage," and, in consideration of 1% per annum of the principal, to be deducted from the interest, guaranteed the repayment of the principal, with interest at 5%, and agreed to collect the interest. It was stipulated also that the trust company, for the purpose of facilitating the collection of the debt and interest, would retain possession of the bond and mortgage and note the assignment thereof.

The trust company subsequently set up mortgage pools and transferred to pool "C", containing securities in which others had a beneficial interest, its remaining share of $1,500 in the mortgage. On December 15, 1931, the trust company closed its doors and the Secretary of Banking took possession. On petition of the Secretary, the court below, on February 19, 1934, appointed Harry M. Bowman substituted trustee of this mortgage pool. Snoke, the mortgagor, on January 17, 1936, paid him the principal of $4,500 and interest. Bowman filed an account of his trusteeship of the pool, in which he charged himself with monies collected, including the amount he received in payment of the Snoke mortgage. In the schedule of distribution attached to his account, there was allocated to Mrs. Stauffer the sum of $3,233.50 which represented her full portion of the mortgage principal and interest, but she was charged with $269.83, her alleged proportionate share of the expenses incurred in the administration of the pool.

The only exceptions filed to the account were by Mrs. Stauffer. Those relating to the deduction of the $269.83

were sustained by the learned court below. It is of this action the appellant complains.

The trust company had no authority to place in the pool property which its own books disclosed had been specifically assigned to Mrs. Stauffer and had belonged to her since December 1, 1925. That was prior to the formation of the pool, and the testimony clearly established that the trustee knew of her ownership. Her share of the mortgage was never part of the pool, nor was it an asset of the bank when it ceased to function— and cannot be so treated. There is no proof that any certificate was issued to her evidencing the fact that she had the right to participate in the proceeds of the pool. Its administration therefore was none of her concern. No expenses were incurred in the collection of the Snoke mortgage and Mrs. Stauffer, as a co-owner thereof, could not be saddled with any costs or expenses in the liquidation of this pool in which she had no financial interest; nor could her vested ownership of the security, evidenced by a valid assignment, be affected by the insolvency of the trust company. True, she did not record the transfer of part of the mortgage and bond, but that did not affect her acquired rights. Recording is not essential if interested parties are not prejudiced by failure so to do.

*Hancock's Appeal,* 34 Pa. 155; *Hodge's Appeal,* 84 Pa. 359; *Appeals of Fourth National Bank et al.,* 123 Pa. 473, 16 A. 779, and the other authorities relied upon by appellant, are not in point, as in those cases there were forced sales of property and less was realized therefrom than was required to liquidate the indebtedness. Here, no question of a pro rata distribution or priority rights of creditors are involved, as in those cases, for the entire debt due the owners of this mortgage was paid.

The solution of the problem before us does not depend primarily on a breach of the clause in the agreement

that the trust company would guarantee the repayment of the mortgage. As we have already observed, the indebtedness was paid in full, the trustee has accounted therefor and is ready to pay, subject to the credit claimed. Mrs. Stauffer's status as a co-owner of the mortgage was fixed prior to the time the Secretary of Banking took possession of the trust company. We can see no equitable or legal reason to divert money due her to the payment of any part of the costs and expenses of the administration or liquidation of this pool. She, individually, owned two-thirds of the mortgage; it has been paid to her agent, and she is entitled to all the proceeds, less only commission she agreed to pay.

The decree of the lower court is affirmed, at appellant's costs.